IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADAM REYES HORNBUCKLE

   PLAINTIFF         Case No.

               Judge:

AND

GERALD  MOTORS INC.
D/B/A GERALD TOYOTA OF MATTESON

   DEFENDANT

## PLAINTIFF'S COMPLAINT

**NOW COMES** PLAINTIFF, ADAM REYES HORNBUCKLE, and files this complaint to redress his employer violating 42 USC § 1981 and the Illinois Human Rights Act for discrimination based upon his race, religion and national origin including the creation of a hostile work environment and for retaliation.   Plaintiff is awaiting a right to sue letter but the EEOC has not issued one even though it was requested over 2 months ago.  For his cause of action Plaintiff states as follows:

1.  PLAINTIFF,  ("Plaintiff") is a Male who resides in Cook County Illinois. Plaintiff is of Hispanic Heritage; his religion is Christian and he is not Muslim or of Arab descent.

2.  DEFENDANT, GERALD  MOTORS INC has done business as GERALD TOYOTA OF MATTESON in Matteson, Cook County Illinois.  Defendant is registered to do business in Illinois and operates a car dealership.  Defendant engaged in a business that affects interstate commerce that employs 15 persons or more persons within the state during at least 20 weeks of a year.

3.  PLAINTIFF was an employee of DEFENDANT as defined by IHRA 775 ILCS 5/2-101 (A).

4. Jurisdiction over the statutory violation alleged herein is conferred as follows: for 42 USC 1981 and when the Title VII claims are provided, 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3)  as well as supplemental jurisdiction from State claims under the Illinois Human Rights Act ("IHRA").

5. Venue is proper in this Court as Defendant is located in Cook County Illinois and acts and occurrences occurred in Cook County Illinois.

6. Plaintiff timely filed a charge of discrimination pursuant to the Illinois Human Rights Act ("IHRA") with the Illinois Department of Human Rights ("IDHR") and to the Equal Opportunity Commission ("EEOC"). Plaintiff opted out of the investigation with the IDHR and received a right to sue letter IDHR allowing his to file his complaint in Court.

7. This Complaint is filed within 90 days of the opt out letter of the IDHR being received by Plaintiff.

8. Plaintiff has requested the Right to sue almost 90 day ago and from the EEOC, but the EEOC has failed to provide one. Plaintiff has emailed several times for the right to sue letter and will have to amend the complaint to add said cause of action under title VII.

9. Additionally, Defendant recently requested Plaintiff to return to work while Plaintiff believed he was either fired or constructively discharged.  Plaintiff will have to file an additional charge relating to Defendant refusal to accommodate his disability and further set forth the discharge/constructive discharge claim.  While Plaintiff believes that he has already been constructively discharged, the refusal to accommodate the Plaintiff and provide him a safe working environment were not part of the charges filed and the Disability issues did not come up until the past few weeks.

10. Defendant employed three Muslim General Managers who are of Arab descent. The three managers include General Manager, Mikle Smiley, General Sales Manager, Manard Taher, and Sales Manager, Mohamed Zidan.

11. General Manager, Mikle Smiley, General Sales Manager, Manard Taher, and Sales Manager, Mohamed Zidan supervised the Plaintiff and could fire the Plaintiff and set his hours. They also determined who would be paid and who would get credit for a sale.

12. While Plaintiff worked for Defendant, General Sales Manager, Manard Taher, and Sales Manager, Mohamed Zidan created an abusive and hostile work environment for Plaintiff and other employees who were not Muslim or Arab Descent.

13. During Plaintiff's employment with Defendant, employees who were of Arab Descent and/or Muslim were been treated significantly better than employees who were of a different race, religion and national origin.

14. Defendant favored applicants, customers and employees who are Muslim or of Arab Descent compared to other individuals who are not Muslim or not of Arab Descent.

15. Defendant provides employees in Sales who are of Arab Descent or Muslim better opportunities to succeed compared to employees who are not of Arab Descent or Muslim.

16. General Manager, Mikle Smiley, General Sales Manager, Manard Taher, and Sales Manager, Mohamed Zidan decreased leads to non-Muslim/Arab descent employees, treat the non-Muslim and/or employees who are not of Arab Descent inferior to employees who were Musim and/or Arab Descent.

17. Defendant's employees who were not Muslim and/or of Arab descent were provided less support, less training than Muslim/Arab descent employees. More importantly, Defendant provided better customer leads to Muslim/Arab descent employees than employees who were not Muslim or of Arab descent.

18. Defendant would send Plaintiff home from work for no reason on several days, so he would not make sales and so the Muslim Employees would get more sales.

19. Defendant would take away sales which Plaintiff earned and others and give them to Muslim/Arab descent employees.

20. General Manager, Mikle Smiley, General Sales Manager, Manard Taher, and Sales Manager, Mohamed Zidan mistreated employees and treated them inferior based upon whether they were Muslim or not.

21. Defendant treated employees who were Muslim and/or Arab descent superior to Plaintiff due to Plaintiff's race, Hispanic, his religion, Christian, and Plaintiff's being of Hispanic heritage.

22. Plaintiff heard Zadan and Taher make numerous Antisemitic comments which Plaintiff found offensive. Plaintiff objected to the numerous anti-Semitic and other discriminatory statements made by Zidan and Taher.

23. Plaintiff made several complaints to Mike Smiley relating to the difference in treatment to customers of Defendant and employees of Defendant because of the person's race, religion or national descent. Smiley told Plaintiff that Plaintiff should ignore the two managers.

24. While Plaintiff worked for Defendant, Defendant created and promoted an abusive and hostile work atmosphere for employees. Employees were not safe at Defendant's workplace.

25. While working for Defendant, an employee of Defendant, Greg Logan jumped on Plaintiff and struck Plaintiff several times while he was on top of Plaintiff, on or about August 19, 2022. Plaintiff was injured from this incident. Plaintiff previously warned the general manager, Mike Smiley about Logan's attitude and threats of Logan to Plaintiff. Plaintiff sustained physical injuries and also Plaintiff had skin damage and cuts due to Logan's attack of Plaintiff. Plaintiff also suffered other emotional damages due to Plaintiff being battered at Defendant's place of business.

26. Plaintiff was a top salesman for Defendant. Despite Plaintiff's excellent sales, Defendant provided greater leads and customer contact to its employees who were Muslim and/or Arab descent. Plaintiff

had to work several times harder to get sales than the Muslim employees did as the Muslim employees were given more leads and were given sales that other employees did.

27. Defendant did not provide Plaintiff the same support that it did for Muslim and/or Arab employees. Muslim and/or Arab descent Employees were given much better working conditions and opportunity for sales than employees who were Muslim and/or of Arab Descent..

28. In the internet area, Smiley, Zidan and Taher required the internet employee to provide the Muslim employees greater opportunities and sent the leads to them. Defendant directed the person who worked in the internet area to give the leads to the Muslim employees.

29. Plaintiff performed his job duties in a satisfactory manner.

30. Plaintiff witnessed The three managers who were Muslim and of Arab Descent give better pricing to Arab/Muslim customers than it did to other customers who were non-Muslim or of Arab Descent. Muslim and or Arab descent customers were given preferential pricing compared to Black customers.

31. Defendant would also violate Toyota policies by increasing the sell back price of leases and discounted prices to Muslim/Arab customers compared to customers who were Black.

32. The abusive work atmosphere of Defendant intimidated the Plaintiff and placed Plaintiff in fear for his safety due to the constant hostility at Defendant's place of employment.

33. On May 19, 2023, Mohamed Zidan yelled at the plaintiff and threatened the Plaintiff. Zidan then struck the Plaintiff in the chest. Zidan also then threatened to fire the Plaintiff and told Plaintiff he send him home which would cause Plaintiff to lose more sales.

34. Mohamed Zidan striking of Plaintiff caused Plaintiff physical harm which caused an abrasion on his chest and also caused him emotional trauma. Having been battered at least two times at Defendant's place of business it was clear that Plaintiff was not safe to Plaintiff.

35. Plaintiff went to doctors who had diagnosed Plaintiff with injuries form the battery of Plaintiff from Zidan and the other employee. Doctors also diagnosed Plaintiff with anxiety depression and other disorders due to the hostile work environment of Defendant. Plaintiff was diagnosed with Acute stress reaction, F43.0 (ICD-10) (Active) with concomitant features of depression and anxiety due to his working environment.

36. Respondent has a policy that it will fire an employee for any placing their hands on another employee.

37. Plaintiff met with Matt Gerrald, an officer or owner of Defendant about the treatment he had received and Plaintiff being struck  Matt Gerald told Plaintiff that Plaintiff should find another job and that he liked Zidan management style of management. Matt Gerald also told Plaintiff that Illinois is right to work state and that Gerald could fire Plaintiff and did not need a reason in Illinois to fire the Plaintiff.   Gerald told Plaintiff that Plaintiff should find another place to work that he would write him a good referenced.

38. Defendant did not terminate Zidan after he struck the Plaintiff.

39. Defendant fired other employees who struck an employee of Defendant who were not Muslim.

40. The actions of DEFENDANT toward Plaintiff were malicious or was in reckless disregard to Plaintiff's rights.

## <u>COUNT I  RACE/RELIGIOUS DISCRIMINATION</u>

41. Plaintiff realleges paragraphs 1-40 in Count I as set forth herein.

42. 775 LICS 5/2-102(A) makes it unlawful for an employer to engage in harassment or discharge, discipline and create different privileges or conditions of employment on the basis of a person's descent, national origin, race or religion.

43. . The actions of defendant amounted to a constructive discharge of Plaintiff's employment. Defendant's conduct towards the Plaintiff made Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's position could not work with Defenant.

44. DEFENDANT treated Plaintiff differently because Plaintiff he was a Christian, not Muslim, because of Plaintiff race, Hispanic and/or as him not being of Arab descent.  Plaintiff lost money due to Defendant applying its policies in a discriminatory manner such as given leads to Muslim employees over non-Muslim employees.

45. Defendant's differences in terms and conditions of employment which Plaintiff was subjected to by DEFENDANT were done because of his race, national descent, religion and/or national origin and the Employer's actions were unlawful discrimination against Plaintiff in violation of 775 ILCS 5/1-103 (Q).

46. Defendant's actions towards Plaintiff damaged Plaintiff. Plaintiff has suffered monetary loss, loss to his reputation, incredible pain and suffering and other damages.

## **COUNT II 42 USC 1981**

47. Plaintiff realleges Paragraph 1-46 as set forth herein.

48. Plaintiff race is Hispanic.

49. Defendant's actions as complained of herein violated 42 USC 1981 and were done to Plaintiff because of Plaintiff's race, Hispanic and not of Arab Descent.

50. Plaintiff was subject to a hostile work environment due to his race, Hispanic.

51. Defendant actions damaged the Plaintiff including loss of wages, monetary loss and pain and suffering.

52. The proximate cause of Plaintiff damages were Defendant's actions towards Plaintiff.

53. Defendant's actions were done with reckless disregard for Plaintiff known protected civil rights.

## COUNT III  HOSTILE WORK ENVIRONMENT

54.  Plaintiff realleges paragraphs 1-53 into Count III as set forth herein.

55. The IHRA at 775 ILCS 5/2-101(E-1)defines harassment as follows:

"Harassment" means any unwelcome conduct on the basis of an individual's actual or perceived race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, unfavorable discharge from military service, citizenship status, or work authorization status that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. For purposes of this definition, the phrase "working environment" is not limited to a physical location an employee is assigned to perform his or her duties.

56. Defendant actions were unwelcome conduct on the basis of Plaintiff's race, color, religion, national origin and/or ancestry that had the purpose or effect of substantially interfering with Plaintiff's work performance and created an intimidating, hostile, or offensive working environment.

57. Plaintiff's supervisors and other management employees of Defendant could affect the conditions of Plaintiff's employment including the power to the power to hire, fire, demote, promote, transfer or discipline Plaintiff.

58. Under the IHRA supervisory harassment of an employee has strict liability.

59. The conduct occurred by Defendant to Plaintiff because Plaintiff was a Hispanic Christian, a non-Muslim and/or not of Arab descent.

60. The conduct that Defendant did towards Plaintiff was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

61. At the time the conduct occurred, Plaintiff believed that the conduct made his work environment hostile or abusive.

62. Defendant's conduct caused Plaintiff to be constructively discharged.

63. Defendant did not take reasonable steps to correct the situation and/or prevent harassment from recurring. Instead, Matt Gerald told Plaintiff he should find another job and that he liked Mohmad Zidan and how Zidan operated his company.

64. Defendant's actions towards Plaintiff damaged Plaintiff. Plaintiff has suffered monetary loss, loss to his reputation, incredible pain and suffering and other damages.

**COUNT IV RETALIATION**

65. PLAINTIFF realleges paragraph 1-64 into Count IV as set forth herein.

66. The Illinois Human Rights Act makes it unlawful for an employer to fire an employee in retaliation for making a complaint of discrimination or asserting a right to protection under the IHRA. 775 ILCS 5/6-101(A) makes it is a violation of the IHRA to retaliate against a person who has opposed the which he or she reasonably believes and in good faith believes to be unlawful discrimination.

67. Plaintiff and others have made complaints of discrimination to Defendant.

68. Defendant failed to investigated Plaintiff's allegations of discrimination or hostile work environment.

69. Defendant did not take reasonable steps to correct the situation and/or prevent harassment from recurring. Instead, Matt Gerald told Plaintiff he should find another job and that he liked Mohmad Zidan and how Zidan managed his company.

70. The effect of Defendant's actions were to fire the Plaintiff or constructively discharge the Plaintiff, decrease Plaintiff's sales as a punishment for complaining about the unfair treatment of Defendant to other employees who were Muslim and/or of Arab Descent and the actions were done in retaliation for Plaintiff asserting his rights the Illinois Human Rights Act and 42 USC 1981.

71. Plaintiff was damaged due to the acts of his employer and has had to endure emotional stress, no insurance, lost pay and wage and other damages.

72. The actions of DEFENDANT toward Plaintiff were malicious or recklessly indifferent to was in reckless disregard to PLAINTIFF'S rights.

WHEREFORE, Plaintiff, Adam Reyes Hornbuckle, prays that this Court (i) declare that the employment practices complained of in this complaint are unlawful in that they violated the IHRA and 42 USC 1981; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the IHRA and 42 USC 1981; (iii) order the Defendant to make the Plaintiff whole with full back pay, payment of his stock options he was denied, and reimbursement for all loss of pension, retirement, insurance, Social Security and other monetary and non-monetary benefits, and prejudgment interest, all in amounts to be proved at trial as well as any front pay; (iv) order that the Defendant pay Plaintiff a sum in excess of $300,000 as compensatory and punitive damages; (v) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (vi) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vii) grant such other and further relief to the Plaintiff as the Court deems just and proper.

## **JURY DEMAND**

**PLAINTIFF DEMANDS A JURY RELATING TO THIS MATTER.**

_____
Steven D Horak # 6207126
940 Knollwood Dr
Buffalo Grove IL 60089
847-877-3120
Steve@stevenhoraklaw.com